What calls the case of people ex rel. Madigan v. Apex Oil et al. Case number 5-160426. Good morning. May I please report. My name is James Bennett, Jim Bennett, and I represent Frim Corps. We are here on a challenge to a good faith determination by Judge Crowder in the long-running piece of litigation involving refinery property in Hartford, Illinois. We are challenging the determination regarding whether this $10,015,000 settlement satisfies the good faith requirements of the Contribution Act. Judge Crowder noted, although ruling against us, that we raised issues that were well worthy of scrutiny. I know the Court is familiar with the briefing on it. I think that our appeal really focuses in on one issue and one portion of the trial court's good faith determination. On page 4 of the court's ruling, what the court noted on this key issue that we had as our primary challenge to the settlement, that we did claim that Apex was not paying its fair share. As Frim Corps argues, it has paid $51 million to date, and that the total cleanup will be near $200 million. And then the analysis of that issue was, of course, in the litigation pending before this Court, there have been no judgments entered. Our view is that that type of analysis on page 4 of 6, related to equitable apportionment of damages among joint tort fees, runs afoul of the Johnson v. United Airlines case, which I think is the guiding North Star for evaluation of the good faith of such settlements. And where the court ran afoul of Johnson was that Johnson says very clearly that the court's totality of the circumstances standard requires the court to consider three factors, the probability of recovery, the defenses raised, and then what we believe was lacking in this instance was the potential legal liability of the settling party. Now, I am standing before you saying that a $10 million settlement is insufficient, and so I think that understanding the facts and circumstances is important to understanding why that is so. The undisputed evidence was presented by us in our challenge to the good faith finding. That evidence was that the total cost of this liability that were alleged to be a joint tort fees is $203 million. That is at appendix 759, which is an affidavit from a person responsible for the cleanup. The estimate at that time was that we, the fact was we had paid $51 million already, and we had $150 million more in believed to be responsibilities at that time. Apex is the primary person responsible for that, and I don't think that they're, I mean the state's own complaint alleges that. If you go to the state's allegation against both of us, essentially at paragraph seven through ten of count one, the state does a nice job of laying out what Apex had done, looking at the issues of having polluted, having owned the refinery for 21 years compared to our 14 years, and having engaged in a series of environmental practices that don't meet current standards. In addition, this case is like a couple of the cases that we really rely on, which would be associated aviation and Strickler, because there's actually been a whole other trial about responsibility for the pollution coming out of that refinery property. Judge Herndon in the Southern District of Illinois actually had a couple of week long trial, and he made a series of findings about the conduct of Apex at the refinery, including findings, and his order can be found at essentially appendix, these findings can be found at appendix 382, 383, 385, 389, right around there. But he found after hearing evidence that there were numerous spills and leaks at the refinery by Apex, that there were significant quantities of petroleum products on the ground at the refinery, that they had 10 million gallons of gasoline under the refinery in 1979 when Apex owned it, that there were 19 to 24 feet of gasoline on the water table at the refinery when Apex owned it, and that they did a 1987 technical assessment showing that there was substantial contamination and that they lacked an effective effort on maintenance at the time. We bought the refinery out of their bankruptcy in 1988. We ran it from 1988 to 2002. So at a simple level, what you're looking at here is they had it 21 years. We had it 14 years. They ran it during a time period of low environmental regulations, and our experts who we presented to the trial court, a man named Scott Stout, said that the gasoline that we're cleaning up is of the type made during that performance era of gasoline. If you guys, everybody remembers the leaded gas, and that's the main fingerprint signature that shows that this is the Apex era. And so what we have is a situation where the $10 million comes out to be 5% of the overall liability, and that does not satisfy the Johnson factor of needing to consider potential legal liability in this case. The second purpose, equally important, defined in Johnson is that we have to have equitable apportionment of damages before there can be a good faith finding. The settlement amount under Johnson must bear a reasonable relationship to the settling party's relative culpability. And we cite a series of cases that go further and discuss how to apply those Johnson factors. But they say things that the settlement amounts must be within a reasonable range of the settling party's fair share of liability. That's the Cianci case. Associated Aviation says an agreement cannot be construed as a good faith settlement if the effect of the settlement shifts a disproportionately large and inequitable portion of the settling defendant's liability onto the shoulders of another. And I think that where things went wrong in our view, Your Honors, is, and the dispute between the parties can really be crystallized by a review of the state's brief in your court here at pages 28 and 29 of their brief. They say that they believe that the court need not consider relative fault or the reasonable range of liability. That's at page 28. At 29 of their brief, they state courts need not determine, quote, proportionate culpability, close quote, or a reasonable range of liability at 29. And the trial court, I think at the urging of the approach taken by the settling party, does not consider those factors because her entire analysis of relative responsibility or, in the words of Johnson, equitable apportionment, is to say, yes, it's $200 million, but there's no analysis, consideration, or anything like that to decide what Apex's potential legal liability would have been under those facts. And I believe and we submit that the state is asking for a legal expansion of Johnson in a way that is not true to Johnson because what Johnson actually says that the court is capable of ruling on good faith without a precise determination of the overall damages suffered by the plaintiffs and the settling defendant's proportional liability. We're not asking the trial court to undertake a precise determination of exactly what it's going to be. We're not asking to have a month-long trial and say, okay, it is $203 million and Apex bears 80 percent, which is, you know, or something like that. But we are asking as a legal matter that the court direct the trial court to consider whether this is, under Johnson, an equitable apportionment of damages of the alleged tort feasors, which did not happen before. The state cites for its rule on page 29 of its brief that you don't have to consider proportional culpability or reasonable range Johnson for that proposition. And Johnson in that section says, in fact, that the court doesn't have to do a precise determination of overall damages, but they do need to think about equitable apportionment. Counsel, let me ask you a question in that regard. Your brief indicates estimated total cleanup costs exceeds $200 million, and you're giving me a figure of $203. Where does that figure come from? Certainly, Your Honor. There's an affidavit from a person named Tim George. It's at appendix page 759. He's the person who is responsible for the ongoing cleanup. What's happening is that since the state filed the case, my client, PrimCorp, has been voluntarily cleaning up the property. And so they've been in there and they've been doing all of that work. Mr. George is responsible for that, along with a large team of people. And he submitted an affidavit that goes through two things. One is we're working with consultants and have been for 10 years, and he breaks out the number of amounts of money spent over the 10 years and gives that as precisely $51 million. Then in the next paragraph of his affidavit, he explains that the estimated cost at that point in time is $200 million for the entire cleanup based on their 10 years of experience. It's at A759, been working with the state. There's no evidence to the contrary on that amount. Okay, thank you. Thank you, Your Honor. Counsel, listen. Apex argues they've got several defenses. They've argued that. How do you, I mean, the court apparently considered that, did it not, as far as in reaching its decision that the settlement was, you know, got the stamp of approval? Yes, Your Honor, we agree that the court did consider that, and that the court was familiar with those defenses, having ruled on them. And one of those defenses was a subject of a motion to dismiss where the court actually denied their motion to dismiss on release. Our point on appeal is not that the court didn't consider the defenses because under Johnson there's three factors that the court has to consider, probability of recovery, which Apex has solved and can pay more, defenses raised, which is the subject of your question, and we're not challenging the court's consideration of those, but she completely did not cover the potential legal liability issue. And in a totality of the circumstances analysis, we don't think that it's appropriate to settle something that resolves such an important issue with so much money on the line without going through the third factor, which is the subject of our appeal. And those defenses, of course, that Apex has raised, this is not like Johnson. I think everybody's probably familiar with Johnson's facts, but one of the things that happened in Johnson is they settled the case extremely early in the face of a very strong immunity defense that thought it was going to be the subject of a motion to dismiss. Here we are not in an early stage of the case. And as to Apex's defenses, the motion to dismiss to pay money damages actually was denied by the court. No summary judgment was filed in the 13 years that the case was pending to resolve that issue. We have a federal case where Apex raised many bankruptcy-related issues that was resolved against it. And so we are not saying that Judge Crowder did not consider the defenses. But what we are saying is that under Johnson, the totality of the circumstances requires the consideration of all of the factors and that this analysis on page 4 of her opinion, where she recites what we say about the overall liability and then just says there hasn't been a judgment yet, doesn't meet the requirement of Johnson that you look at equitable apportionment. There should be an analysis and a discussion of is this in any way equitable in light of all of the factors, and that is what is missing from the opinion. And we have an opinion here, so it's not as though the court didn't set out the court's reasoning so we don't have to guess about what it was. And what she says is simply that there hasn't been a judgment that established that yet, but no discussion of equitable liability. And under Johnson, we also agree, Your Honors, that we're not asking for a trial, and this goes to the point where Johnson cites a case called McDermott. And the parenthetical in Johnson is that the courts have rejected proportionality or reasonable range tests for determining the good faith of settlement, which is where the state is trying to now expand that to our situation here. But McDermott v. Metropolitan Sanitary District is actually a case where the court had a full trial. So the jury went out, and then the jury came back. And in the meantime, while the jury was out, the parties settled. And the argument on appeal there was that, oh, my gosh, the verdict came out to be quite high. And so the question in McDermott where they were looking at proportionality and reasonable range was compared to a subsequent jury verdict. And that's exactly what it says, that the court does not need to look at the range in order to determine whether defendants' settlement with a plaintiff when compared to the jury's subsequent verdict was made in good faith. So we understand that you could have a case where you were trying at settling it after it had already been tried, and you can't go and say, oh, the settlement's bad because look how the jury came back. You have to do it at the time. But here you do need to look at whether it is equitable when compared to what the overall exposure is. And so we do have a motion to dismiss that was denied on those defenses, Your Honor, but you cannot neglect one of the three main factors that Johnson says that you have to consider, and there are a series of cases that look at that. And I'd like to focus on a couple of cases that we think are particularly important in that regard. One is the associated aviation case that I mentioned a few minutes ago. In that case, that was about a plane crash with a property damage claim, and the case settled that was being challenged for $6 million. And the municipalities who were co-defendants objected. And the court looked at the three Johnson factors, including potential legal liability, and noted that there had been previous litigation on the case with different parties that found the challenged defendant, Aon, 90 percent at fault, and they were settling for $6 million. So it is a major amount of money. The demand was 28. But associated aviation is like this case because we actually have an order from Judge Herndon where Judge Herndon goes through and recites all the liabilities of Apex on this site. Apex is alleged to have polluted the refinery site. The primary allegation of the state against us is in paragraph 12 of the nuisance count, which is the first count, and what that allegation says is, well, you didn't clean up Apex's pollution, and then they say that we have a few releases which we don't think are material to the $103 million. And so they are primarily liable, and there has been a legal determination of the facts that show that by Judge Herndon about their conduct at the refinery. The second main case that we're relying on, or a main case we're relying on, is the Stickler case where what happened there was that there had been a lawsuit by a construction worker against the employer and then some other third parties. And there had been a determination by OSHA that the employer had been at fault, and then there had been a workers' comp amount that had been set. And so again, like here, Stickler had the benefit of a different judicial proceeding helping to assess the relative responsibility and culpability of it. And so we think that those two cases, along with an application of the Johnson factors, show that in fact here this settlement does not meet the good faith requirement. And I understand that this is an abusive discretion standard, of course, right? And it is based on the totality of the circumstances. And so there can be a tendency to say that, well, if it's discretionary and if it's totality of the circumstances and if this court had the case for some period of time, I expect that's what I would hear and what we see in the briefing, how can we not affirm that? And the answer to that, I think, is that we're challenging this settlement on a legal mistake that had been made, in our view, by following the state's guidance that you don't need to consider at all relative fault or relative responsibility under Johnson. And that's exactly what the court did. And so to focus precisely in on the legal error that we think requires a reversal and at least a remand to consider the full scope of the Johnson factors. The case is still interlocutory. As you know, this was certified. And so we would ask that this be held to not meet good faith. But another option for the court, of course, is to remand it for a full consideration of the Johnson factors. But we're really focusing in on the failure after noting the $51 million plus the $200 million being near $200 million. And the court's failure to talk about Apex's equitable share of that liability is, in fact, a legal mistake. Because you have to exercise discretion. You still have to look at the three factors that Johnson says is important. And so for that reason, we think that the case should be reversed and that good faith should be reversed. And the court could then, if it chose, remand for a full consideration of the Johnson factors under the facts and circumstances. At this time, Your Honor, unless there's further questions, I would reserve the remainder of my or I would come back for my rebuttal. Okay. Thank you, counsel. Thank you very much, Your Honors. May it please the court. Your Honors, Bill Knapp on behalf of Apex Oil Company, Inc. With the court's permission, the State of Illinois and Apex have agreed to share their 20 minutes equally, 10 minutes. And I will begin. As Print Corps has acknowledged, the standard of review in this case is abuse of discretion. And despite some, I guess, verbal gymnastics there at the end to suggest that somehow there's an error of law that is subject to a different standard, clearly the case law is absolutely clear that that is the basis upon which this matter is reviewed by the court. And, of course, that means under the case law that this court will reverse only where a trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. So that's the standard that Print Corps must meet in order to get a reversal of the trial court's decision. And, of course, the Johnson case, which everybody cites, too, and is certainly the primary case on the subject of good-faith settlements, says very clearly that it is the trial court that is in the best position to determine what information it needs to fully adjudicate the issue of good faith. And so the court in this instance, the court of review, defers to the trial court's own discretion not only in its ruling, but also what the court needs to consider in order to make that ruling. And, of course, in this instance, the trial court issued a very lengthy and detailed order in which she set out precisely what analysis she performed, what materials she reviewed, and she noted in that detailed order that, in fact, all the information presented by Print Corps was well known not only to the court but to the parties, settling and non-settling parties, prior to the hearing. And so all of that was taken into consideration. So for counsel to suggest that the court did not consider all the Johnson factors I think just flies in the face of the record, flies in the face of what we know to be the facts. And so in this case, the court considered the Johnson factors, expressly discussed Johnson in her opinion, discussed how she applied Johnson to the facts presented to her in the case. She discussed the issues, and in particular there's a discussion and it was raised in argument and referenced in the order about the legal issues in the case because what the court says is the potential legal liability. You mean raised in argument before Judge Crowder or just now? Both. I guess I'm raising it now, but it was raised in front of Judge Crowder, by me, by the state of Illinois. And one of the critical pieces of this story is that the state was litigating actively against Print Corps and Apex, Print Corps being the current owner of the refinery property, Apex being the historical owner of the property. The state filed a 30-minute complaint. Apex filed a motion to dismiss. In that motion to dismiss, the court ultimately, in response to that motion, ruled several very important things. One was that because Apex is no longer the owner of the premises, injunctive relief was not available to the state. That was one of the primary portions of relief sought by the state against both defendants. And the court held correctly under the case law that because Apex is no longer the owner in possession, that no injunctive relief was not available. The court also ruled that the Oil Spill Responders Liability Act was inapplicable against Apex because it was enacted after Apex no longer owned the property. But it was applicable to Print Corps. Likewise, the court had previously ruled that because of a release executed between Print Corps and Apex back in 1992, that Print Corps' rights of contribution had already been extinguished, as against Apex anyway. So in a sense, there's a basis for which this court could rule that Print Corps doesn't have standing to raise this objection because all they're trying to do is preserve a right of contribution which the trial court has already deemed has been lost by virtue of a prior release. But in any event, this is important for this reason. Print Corps is still subject to injunctive relief. Print Corps is still subject to the Oil Spill Responders Liability Act. Print Corps does not have a bankruptcy defense, which Apex does. That bankruptcy defense is preserved. The court did not grant the motion to dismiss on the basis of bankruptcy, but indicated that that was an issue that remains for Apex's defense, which Print Corps has no such defense. Now, the Seventh Circuit in the U.S. EPA case found that the bankruptcy did not discharge the federal verdict, but that's because it was a RCRA case seeking injunctive relief against Apex, and it was not an action for money damages. So the Seventh Circuit said because the federal case in front of Judge Herndon was a RCRA injunctive case and not a money damage case, there was no basis to apply the bankruptcy defense. This case is a money damage case, particularly now that the State doesn't have injunctive relief against Apex. So the State will tell you, they said in the trial court, they said in their brief, I assume they'll say again today, that that's the reason they settled with Apex because the defenses raised by Apex, some of which were complete defenses to liability in this case, causes them to believe that this settlement was in the best interest of the State. And so that's an important backdrop. So it's not just about numbers. It's not just about money, how much is potentially liable and how much is actually paid. It's about legal defenses. I've got limited time, so I'm going to try to proceed on. But it's important to note that the Johnson court stated, and I'll just pull some language from the Johnson court, that whether a settlement satisfies a good faith requirement contemplated by the Contribution Act which is a matter left to the discretion of the trial court, we've talked about that, the amount of settlement must be viewed in relation to the probability of recovery defense raised and the settling party's potential legal liability. The fact that a settlement, and this is the language that's important, the fact that a settlement is advantageous to one party is not necessarily an indication that it's bad faith. I don't think in 32 years of practice I've ever had a case where the codefendant said, good job, you paid enough. I almost always have an objection from a codefendant about a good faith settlement as we have here. But the fact of the matter is that the court, and this is also from Johnson, is capable of ruling on good faith without a precise determination. This is a direct quote from the Johnson case. The court is capable of ruling on good faith without a precise determination of the overall damages suffered by the plaintiff and the settling tortfeasor's proportionate liability. Well, counsel, the counsel argues, well, it might be precise, but it's not even in the ballpark. I mean, that's the essence of their argument. Yeah, but they fail to take into account one of the, they focus on one of the three Johnson factors, but they completely omit the issue of legal defenses and legal liability, which is the state cannot recover the relief against APEX that it can against PrimCorp. It has a much better case because PrimCorp is the current owner and possessor of the refinery and therefore is subject to enforcement powers of the state in a way that APEX is not. And that's the key factor, and I think the counsel for the state will tell you that that was the key factor that drove the state to negotiate with and ultimately reach a settlement agreement with APEX. Now, the federal court case is a red herring. Judge Hunter did conduct a trial. In that case, he did not determine the amount of damages. It was a record case, and therefore it was an injunctive relief case. In that case, he simply ruled that APEX was one of the parties potentially responsible for contamination at the site. He expressly stated in his order that he was not ruling or making any comment about the potential responsibility or liability of others who also contributed to the contamination at the site. And, in fact, it's axiomatic both legally and practically that when a party purchases a piece of property which potentially is contaminated environmentally, they buy that liability when they buy that property. And Prim Corp certainly knew that, and the record indicates that they took that into consideration. Indeed, whenever they purchased the property, they were well aware of the condition of the site. So to suggest that anybody was in the dark in this case I think is just inaccurate and misstates the record. As to the cases cited by Prim Corp, the key case is Johnson, and the Johnson decision I think demands an affirmance of the trial court's ruling. We believe that the circuit court, as demonstrated in the record, clearly considered the totality of circumstances and determined that Prim Corp has not shown, by preponderance of the evidence, that this settlement was not in good faith. And that's the standard. We feel that the settlement was made in good faith and is consistent with well-established law and is not arbitrary, fanciful, or unreasonable. And so we're asking this court to affirm the ruling of the trial court by any good faith. Thank you, Captain. Good morning, Your Honor. Good morning, Your Honor's counsel. I am Christopher Turner, the Assistant Attorney General, here on behalf of the plaintiff, I believe, the people of the State of Illinois. And, of course, we ask that this court affirm the circuit court's ruling for over $10 million between the State and Apex that was made in good faith and the court cannot increase its discretion in finding so. Now, going straight to the point, there's only one issue that Prim Corp is raising here on appeal, and it is whether or not the court considered the factors and, basically, whether or not this was within a reasonable range of Apex's total liability. And, of course, it shows on their page that they cite to that the court considered those factors. It considered the $200 million figure that Prim Corp put forward, and it considered the legal defenses that Apex was applying against us. Now, that is really what goes to the court, what was driving the settlement, and which demonstrates, even though it's not our burden to show it, that this settlement is in good faith, are the legal defenses that Apex was applying against us and substantial risk that we faced. There was three primary defenses there. As Counsel for Apex pointed out, there was other defenses, too, but they had three primary defenses that weren't going to, but the first one eliminated what was the primary relief. Actually, the key relief we're seeking is injunctive relief to clean up this mess, this hazard at the refinery. And while we think the court erred below circuit court on, actually, on successive motions to dismiss, there was one back in, I think, 2011 or 2013, and then again in 2014 looked at this issue, and it ruled against us. So we are facing there clearly substantial risk that we can't get any of the primary relief that we're seeking against Apex. Then it had two more separate bankruptcy defenses, defenses which would have eliminated any liability at all. And as Counsel for Apex pointed out, we were put into a particularly difficult position based on the trial court's prior ruling that there was no injunctive relief available, because if there's no injunctive relief available, that is, while we're not going to say our only argument, our key argument to show that the bankruptcy confirmation order would not have discharged Apex's liability, and certainly also would have discharged his liability for a separate agreement that it was a settlement within the bankruptcy proceedings. So the first defense we had was no injunctive relief available, the primary relief we were seeking to make them clean it up. The second was that Apex, who was the debtor in a prior bankruptcy, had been discharged of any liability. And the third was actually that in that bankruptcy proceeding, they claimed that we had settled a specific environmental claim against them, and that individual settlement would have also discharged them due to the leverage that was incited to any liability in this case. Now, that also distinguishes us from the cases that they rely upon. He says he associated Underwriter's case and the Stigler case, and shows it were just like Johnson v. United Airlines. And actually, other cases, that was not that one we agreed, that's the primary case, that's the Supreme Court case, setting down the standard here. We cite other cases, the Salini v. Village of Berni case, the Chicago Province case, other cases which also repeated afterwards, but no, you do not have to have any kind of merit here, and you don't have to prove what is the extent of the damages, you don't have to prove the party's relative culpability. In the cases that they, in Johnson, I'll start with Johnson v. United Airlines. In that case, where there was a key legal defect, a defense that applied, a torn immunity defense, and the court, based on that, had found that a $1,000 nominal settlement of a multimillion-dollar claim was in good faith. The court said there was no evidence before of what were the total damages, we just know that they were claiming millions of dollars, and yet it was okay to settle that case for $1,000. Here, we have a $10 million settlement. A key settlement, substantial money, valuable consideration, which was going to be put into a trust that could be only used to clean up the mess, only used to clean up the public nuisance at the refinery. That money is key, because you also mistake, we don't have funds available to clean up that refinery right now. This month, so this provides very valuable consideration to us to finance a cleanup that, at this point, we don't have. As we pointed out in our group, there's only, actually at that time, about $10 million. When you say we, are you referring to the state of Illinois? I'm sorry, yes, to we, the state of Illinois. The trust can only be used by, under these terms, can only be, the beneficiary can only be used by the Illinois Environmental Protection Agency for purposes only for the cleanup at the refinery. The exact relief we're seeking against PREMCORP and APEX in this case. Now, just like in Johnson, APEX has key legal defenses that would extinguish its liability regardless of its fault, regardless of whatever its proportion of liability is. That was in the Johnson case. And that's the same thing you see in the Salooni versus Village of Gilead case that we saw there. In that case that we also said, they had legal defenses. The defendant had legal defenses that would have extinguished its liability. There's no reference to any such defenses in the Stickler case. There's no reference to any such defenses in the Associated Aviation Underwriters case. In the cases they relied upon, there was fixed and certain liability of the settling party. In Stickler, it was the employer who had settled with the injured worker. And under the statute, they had a present value $1.1 million future obligation. There was no dispute. That was clearly fixed under the statute. But then they settled for much less, for $300,000, I think it was $300,000. But there was no discussion of any sort of other defense that the employer had that was driving that settlement. Same thing in the Associated Aviation Underwriters. There was a jury verdict belowhand that had found the settling party 90% at fault. So this actually found its relative culpability had already been established. There was $28 million. Everyone agreed that was the damages within the subsequent property claim. And yet they settled for $6 million. But there's no discussion, an extensive discussion in the background throughout that case of any defense that was driving that settlement, any legal defense that was driving that settlement. But what there was discussion of in Associated Aviation Underwriters was actually concealed by the settling party. That is, the plaintiff had run off, secretly filed a declaratory judgment action in order for the sole purpose of putting forward the settlement and getting it approved by the court. And that evidence, combined with the fixed liability and culpability, that was the reason that it was found abusive discretion and that was going to send the case back. In this case, we don't have that at all. And we keep playing to the federal order. But as Counsel for APEX pointed out, while we would certainly like to use the federal order against APEX, we certainly believe APEX shares culpability and has substantial fault. That decision, first of all, did not even address the relative culpability of PEMCOR and exclusively said so. It recognized that the U.S. EPA was going after both of these parties, APEX, PEMCOR, and some other parties as well, for the pollution in the village, so not actually the refinery itself. It came from the refinery. And going after them, PEMCOR, with the other parties, basically settled. They signed on to an administrative order of consent and agreed to take up the obligations to do the cleanup. APEX fought it. And that's the only reason the decision only discusses APEX's culpability. It found that APEX was engaged in all sorts of pollution, but it was very explicit. They're not going to look at the other parties, and PEMCOR is one of the other parties, their relative liability, their relative fault, and actually said that this decision no way affects the relative. Their obligations are their fault. And instead, what it found was that it was very clear APEX had joint and several liability for it, basically acknowledging that other parties would be at fault as well. While the Seventh Circuit Court of Appeals on the appeal rejected APEX's bankruptcy defense, the problem for us is, yes, it was very explicit. It was based on that the claim was under RCRA. It was under a federal statute, and it found that that pure, purely injunctive claim under RCRA was not a claim for purposes of the bankruptcy code, so therefore couldn't be discharged. It didn't address any of the legal defenses that APEX had against us. It didn't address their injunctive liability. It didn't address whether or not a state claim also would not be a bankruptcy claim. And certainly, since its basis was it was purely injunctive, once again, yes, we have a complicated problem now. Now, counsel for PEMCOR said that these bankruptcy defenses had basically been rejected, or suggested they had been rejected after the motion was dismissed. They certainly weren't granted, but the court made clear that they were alive. It did not rule against it. It basically just said that it was not willing to rule on it, rule on those bankruptcy defenses on a motion to dismiss, and invited APEX to go back to the bankruptcy court. It said it could continue to raise defense here, and eventually it would decide it, whether it would be on summary judgment or some sort of evidentiary in trial, but invited APEX to go back to the bankruptcy court and have us litigate those defenses there, in the bankruptcy, in the debtors bankruptcy court, to find out what the court there thinks, whether or not it's where it discharges APEX's future liability. Now, the cases, so that is the critical difference, and that is what is driving this settlement. The court has come to our knowledges, was well, was very familiar and well acquainted with these defenses. We had litigated them extensively before it, and for those reasons, we ask that this court affirm the circuit court's judgment, finding that the settlement below was in good faith. Thank you, Your Honor. Thank you, Captain. I'd like to respond to a few points made by counsel for both of the parties. First, with regard to the idea that the state lacking money to clean the refinery as a reason to rush into a settlement on pennies on the dollar is not supported by the record, because the undisputed record evidence is that we're paying for it. We've been cleaning up the property for 10 years voluntarily with work with the state, and that is in the affidavit of Mr. George, 758 of the appendix. It goes through, and we've spent $51 million doing this. Second, if you look at this discussion of this motion to dismiss, it's in the supplemental appendix attached to the state's brief is the ruling. That ruling was in May of 2014, and the court rejected the defense that this release barred the idea that they could seek money damages, rejected the bankruptcy defenses, invited Apex to file summary judgment motions, which they never did in 13 years. If this is such a dead-bang defense like Johnson's immunity for the $1,000 defense, in 13 years couldn't you move for summary judgment on it? Judge Crowder's decision specifically invited Apex, as the state has pointed out, to go to the bankruptcy court if you think this is such a good defense, and of course that doesn't happen either. So we have a circumstance, when you look at all the facts and circumstances, that the case was pending for 13 years without a dispositive motion being granted. And so those defenses cannot bear the weight, and Judge Crowder didn't even give them the weight that the state is trying to do it. I was listening really carefully to the discussion of the judge's order that's at issue here. Johnson says you must consider the equitable apportionment of damages under the alleged joint court feasors. That is the issue that Johnson identifies as the second policy behind the decision. And they identify to you, because it's not in there, no place where the trial court ever even talked about the equitable apportionment of damages, which is one of the two purposes of the Contribution Act and is equally important to the other one, which is encouraging settlement. There is no discussion of Apex's legal liability. The entire analysis of this prong of the act is, of course, in the litigation pending before this court there have been no judgments entered, which I think is suggesting that maybe the damages won't be what we say they are. I'm not sure. But that is not the discussion of the equitable apportionment of damages or all the facts and circumstances. And that's a legal error that was driven by the way that Apex and the state chose to present their settlement. They presented no evidence in support of the apportionment, none, none at all. When we presented our expert affidavits, we have two expert affidavits who say Apex is primarily responsible for all of this. One is from Scott Stout at Appendix 557. One is from a Mary Sitton who's at Appendix 660. They say that Apex is the primarily overwhelmingly responsible party. Judge Herman's order says that they've got 10 million gallons of hydrocarbon product beneath the refinery in 1979, nine years before we buy it. In 1983, there is 19 to 24 feet of hydrocarbons. We don't even own it at this time. Apex owns it. The findings of Judge Herman establish beyond any question that they are giving this case away for literally pennies on the dollar. And when we go to the judge's order to look at does that even matter or have they considered that, has that Johnson factor been considered in any way, there's just nothing in there at all. There is no analysis of that essential fact. And so when we look at the situation, we have the recitation of defenses that were in fact rejected on a motion to dismiss, no subsequent summary judgment ruling or motion, no acceptance of the judge's invitation to present these to the district court, a situation where the expert evidence is undisputed that they're the main people who are responsible, and we have an approval of a good faith finding that extinguishes us from having any rights of contribution against the main bad actor here. And so we would ask that this be reversed and at a minimum remanded for a full consideration of the equitable apportionment of damages from the Johnson case and any further guidance that the court might give. Thank you. Thank you all, the counsel involved, and the court will take this matter under advisory.